**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
TAO AN *et al.*,

        Plaintiffs-Counterclaim-Defendants,

        -against-

LUC A. DESPINS and PAUL
HASTINGS LLP,

        Defendants-Counter-Claimants.
------------------------------------------------------------------------X

**ORDER**

**22-cv-10062 (VEC) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Before the Court is Defendants' application for costs and fees, Dkt. No. 31, related to sanctions previously granted by Judge Caproni. Dkt. No. 29 ("Sanctions Order"). As Judge Caproni's decision explained, "at the center of this lawsuit is self-proclaimed billionaire Mr. Ho Wan Kwok." See Sanctions Order at 2. Kwok declared bankruptcy in the District of Connecticut, and Defendant Luc A. Despins ("Despins"), "represented by law firm Paul Hastings," was appointed trustee. Id.; see also Pac. All. Asia Opportunity Fund L.P. v. Ho Wan Kwok (In re Kwok), Ch. 11 Case Nos. 22-50073, 22-5032 (Bankr. D. Conn. 2022). The Bankruptcy court and Judge Caproni found that Kwok, with Plaintiff Li as his agent, initiated a harassment campaign against Despins and Paul Hastings. See Sanctions Order at 2-4. Judge Caproni found that this "frivolous" suit is part of that harassment campaign. Id. at 1. Thus, Judge Caproni dismissed the suit and granted Defendant's request for sanctions. Id.

Pursuant to Judge Caproni's Sanctions Order, Defendants submitted an application for reasonable attorneys' fees through the declaration of Greg D. Andres and its attached exhibits. Dkt. No. 34.

Defendants request that this Court grant sanctions at a rate of $1,592 in 2022 and $1,760 in 2023 for law partner Greg D. Andres, $1,308 in 2022 and $1,440 in 2023 for counsel Gina Cora, and $796 in 2022 and $895 in 2023 for associates Kate Mathews and Kathleen M. Lewis. Dkt. No. 32 ¶¶ 3-6. Defendants seek reimbursement for 288.7 attorney hours in connection with litigating the motion to dismiss and the motion for sanctions, as well as $843 in costs for fees incurred for service of Defendants' Rule 11 motion papers upon Richard Freeth and Yongbing Zhang. Id. ¶¶ 22, 23, 25; Dkt. Nos. 32-15, 32-16. Defendants additionally seek reimbursement for 16 attorney hours for preparing the instant fee application at a rate of $1,990 for law partner Greg D. Andres and a rate of $1,440 for counsel Gina Cora. Dkt. No. 32 ¶¶ 24-25. In sum, Defendants request a total of $327,222.50. Id. ¶25; Dkt. Nos. 31 at 5, 35 at 6.

Plaintiffs have opposed this request arguing that (i) the fees Defendants request are excessive for the work performed, (ii) Defendants have presented no reliable evidence of how many hours were actually billed on the case by each attorney, and (iii) Plaintiffs and Plaintiffs' Counsel would be unable to pay the outsized sum Defendants request. Dkt. No. 34. Defendants respond that Plaintiffs cannot contend "they have no means to pay" when "the figure '[a]t the center of this lawsuit,' is a 'self-

2

proclaimed billionaire' who appears to be funding numerous legal actions." Dkt. No. 35 at 5 (quoting Sanctions Order at 2).

## I. LEGAL STANDARD

When determining the amount of an award of attorney's fees in a civil case, courts use the "lodestar" method. (RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co., No. 21-CV-11096 (LJL), 2023 WL 112552 at *2 (S.D.N.Y. Jan. 4, 2023). The lodestar method "estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Id. (citations omitted). The fee applicant bears the burden of showing the reasonableness of the rates requested. Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011). "The court may adjust base hourly rates to account for case-specific variables such as the complexity of the issues and attorneys' experiences." Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., No. 04-C-V3531 (LTS) (SLC), 2020 WL 91504 at *3 (S.D.N.Y. Jan. 8, 2020).

In determining the reasonableness of rates, the Court also considers the *Johnson* factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

professional relationship with the client; and (12) awards in similar cases." (RC) 2 Pharma Connect, LLC, 2023 WL 112552 at *2 (citation omitted). "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." Id. (citation omitted). District Courts have broad discretion to determine the reasonableness of rates, and a district court's fee award is reviewed for abuse of discretion. Pasini v. Godiva Chocolatier, Inc., 764 F. App'x 94, 95 (2d Cir. 2019).

## II. DISCUSSION

Defendants seek reimbursement for (i) 16.5 hours of work completed by Greg Andres, a partner with 20 years litigation experience who serves as the co-head of Davis Polk's White Collar Defense & Investigations practice and has specific experience with the Foreign Agent Registration Act, at a rate of $1,592 in 2022 and $1,760 in 2023; (ii) 88.8 hours of work completed by Gina Cora, a counselor who has practiced for over a decade at Davis Polk and has extensive experience representing law firms, at a rate of $1,308 in 2022 and $1,440 in 2023; and (iii) 107 hours of work completed by Kate Mathews and 76.4 hours of work completed by Kathleen Lewis, associates who have both completed federal clerkships, at a rate of $796 in 2022 and $895 in 2023. Dkt. No. 32 ¶¶ 3-6; Dkt. Nos. 32-10, 32-12, 32-14.

Defendants also seek reimbursement for fees incurred in the preparation of the instant fee application, including (i) 1 hour of work completed by partner Greg Andres at a rate of $1,990 and (ii) 15 hours of work completed by counsel Gina Cora at a rate of $1,440. Dkt. No. 32 ¶ 24. Defendants note that Paul Hastings was charged a

discounted hourly rate for all of the aforementioned attorneys. Id. ¶¶ 3-6, 24. With respect to costs, Defendants seek $843 for fees incurred for service of Defendants' Rule 11 motion papers upon Richard Freeth and Yongbing Zhang. Id. ¶¶ 22, 23; Dkt. Nos. 32-15, 32-16.

### A. Reasonableness of Hours Billed

The legal work for which the Court granted sanctions were fees associated with preparing the motion to dismiss and the motion for sanctions, as well as costs incurred in relation to the filing of this fee application. Dkt. No. 32 ¶¶ 24-25. Plaintiffs argue that "the amount of hours spent were excessive" and "there is no way to determine from [Defendants'] exhibits what hours were actually billed on the case by each attorney." Dkt. No. 34 at 1, 3.

"[A]ll hours reasonably expended on the litigation" may be awarded, particularly where counsel "has obtained excellent results." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). However, "hours that are excessive, redundant, or otherwise unnecessary" should be excluded from the fee request. Id. at 434. "In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials. McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006)(citing Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir.1989) and New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147–48 (2d Cir.1983)). Additionally, "[t]he fee application is a necessary part of the award of attorney's fees," and "a reasonable

5

amount should be granted for time spent in applying for the award." <u>Donovan v. CSEA Loc. Union 1000, Am. Fed'n of State, County & Mun. Emps., AFL-CIO</u>, 784 F.2d 98, 106 (2d Cir. 1986).

Here, Defendants seek reimbursement for "the fees charged by the core team members" while they were "conducting legal research, drafting, conferring with the clients and team members, and corresponding with Plaintiffs' counsel." Dkt. No. 31 at 11. These hours spent preparing the motion to dismiss and the motion for sanctions were reasonable and necessary, especially considering that Defendants prevailed on both motions. <u>See</u> Sanctions Order at 14. Moreover, Judge Caproni noted in her Sanctions Order that Plaintiffs attempt to avoid service for the motion for sanctions "reek[ed] of gamesmanship." <u>Id.</u> at 11, n.11. The Court finds Defendants' contention that they had to expend additional resources to combat such "gamesmanship" to be reasonable. Dkt. No. 31 at 11.

Additionally, Defendants' fee application here is supported by time records and invoices. <u>See e.g.</u>, Dkt. No. 32-9, Dkt. No. 32-10. Plaintiffs contend that these records are insufficient because they are "so heavily redacted as to be virtually meaningless." Dkt. No. 34 at 3. However, courts in this district have found billing records to be "sufficiently detailed to demonstrate the number of hours expended" despite redactions made on the basis of attorney-client privilege. <u>See</u> <u>Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing Co.</u>, No. 11-CV-4308 PGG, 2013 WL 6171660, at *5 (S.D.N.Y. Nov. 25, 2013); <u>Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.</u>, No. 04-CV-3531(LTS)(SLC), 2020 WL 91504, at *6 (S.D.N.Y. Jan. 8, 2020).

6

Similarly, the materials Defendants included here meet the requirements for the reasonable calculation of fees, especially since many of the redactions represent charges for which Defendants are not seeking reimbursement. Dkt. No. 35 at 2.

The Court does note that the form in which Defendants presented the hours worked by each attorney made these calculations difficult to verify. However, the Court was able to reconstruct the hours billed by each attorney based on the information provided in Exhibits 10, 12, and 14. See Dkt. No. 32, Ex. 10, 12, 14; Dkt. No. 35 at 2, n.1. While this exercise was cumbersome, the Court cannot agree with Plaintiffs that "there is ***no way***" to make these calculations based on the information presented. See Dkt. No. 34 at 3 (emphasis added). Therefore, this Court finds the number of hours billed by Defendants' counsel to be reasonable and supported by sufficient evidence.

## B. Reasonableness of Hourly Rates

The burden is on Defendants to prove that hourly rates are reasonable and "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). "[C]ourts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Restivo v. Hessemann, 846 F.3d 547, 590 (2d Cir. 2017) (quoting Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009)). "[T]he current market hourly rate[s]" that are "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" are generally considered

reasonable. Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006); Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. at 896, n.11).

Plaintiffs argue that Defendants failed to meet the burden of establishing the reasonableness of their rates because Defendants rely on the rates charged by large law firms in high-end bankruptcy cases, and "there is a much more reasonable and competitive market for the handling of cases such as the instant case." Dkt. No. 34 at 4-5. Plaintiffs "posit that the reasonable rate for the defense of the case should be $434.00 per hour" and cite to a 2021 Clio Legal Trends Report article titled *Solo and Small Firm Hourly Rates: Winners and Losers, by State and Practice Area* to support this contention. Id. at 5, Dkt. No. 34-2. The Court notes that Plaintiffs misrepresented the name of this article in their papers. See Dkt. No. 34 at 5 (referring to the article's title as "*Attorneys At Work, Hourly Rates By State*"). This omission appears to be an attempt to mislead the Court into believing that this article is representative of broader attorney rates in the New York area, but the Court has not been deceived.

Defendants counter that the $434 rate cited by Plaintiffs is inapposite because Defendants' counsel at Davis Polk are not "solo and small firm" practitioners. Dkt. No. 35 at 4. Defendants also contend that the evidence they submitted describes the general rates of other similarly situated law firms, not fees specific to bankruptcy-related work. Id. at 4 n.4 (citing Dkt. No. 32, Ex. 2-6).

Defendants have submitted significant evidence showing that the rates requested here "are consistent with the rates charged by similarly situated law firms

8

of equivalent skill, status, and reputation." Dkt. No. 31 at 9; see Dkt. No. 32, Ex. 1-9. As the Supreme Court has noted, "rate[s] determined in this way [are] normally deemed to be reasonable." Blum v. Stenson, 465 U.S. 886 at 895, n.11. Furthermore, "the best evidence of a reasonable hourly rate is ordinarily the attorney's customary billing rate for fee-paying clients, see Doe 1 v. E. Side Club, LLC, No. 18 CIV. 11324 (KPF), 2023 WL 4174141 at *6 (S.D.N.Y. June 23, 2023), and Defendants' counsel here "charged Defendants rates that are discounted from their standard hourly rates." Id.

Moreover, the Court rejects Plaintiffs' argument that this is just "a one-issue civil litigation dispute," and the rates requested here are "completely out of touch from what would be reasonable in this case." Dkt. No. 34 at 5. Defendants attest that this matter was not "standard" because it was "motivated to harass Defendants," and thus, "Defendants' counsel had to expend considerable time and effort assembling evidence...[of the] harassment campaign against Paul Hastings." Dkt. No. 35 at 4, n.5. This is supported by Judge Caproni's finding that "Plaintiffs filed this lawsuit in bad faith" and engaged in a "harassment campaign against Defendants." Sanctions Order at 13. Given the case-specific analysis of the *Johnson* factors here, including the experience of partner Greg Andres, the prevailing rates charged by similar law firms in this District, and the findings of Judge Caproni in her Sanctions Order, this Court finds the hourly rates presented by Defendants to be reasonable.

**C. Ability to Pay**

Plaintiffs additionally claim that "counsel, and co-counsel, operate small practices, and do not have funds or resources that would cover…the amount claimed by the Defendants' Counsel" and request that the Court "take into consideration the Plaintiffs' and Plaintiffs' Counsel['s] collective inability to pay the outsized sum being claimed." Dkt. No. 34 at 7. Defendants respond that "self-proclaimed billionaire" Mr. Kwok appears to be funding this and other "frivolous and harassing" legal actions, and "Plaintiffs' counsel should not be able to financially benefit from Kwok's financing… and then ignore Kwok's funding to plead that they have no means to pay the resulting Rule 11 sanctions." Dkt. No. 35 at 5. Defendants also note that Plaintiffs have presented no evidence of their inability to pay. Id.

"Where the plaintiff can afford to pay, of course, the congressional goal of discouraging frivolous litigation demands that full fees be levied." Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1028 (2d Cir. 1979). In Midamines SPRL Ltd. v. KBC Bank NV, the court declined to reduce a fee award based on the plaintiff's inability to pay where the plaintiff "never provided a financial declaration or any other documents reflecting his asserted lack of income." Midamines SPRL Ltd. v. KBC Bank NV, No. 12-CV-8089 (RJS), 2016 WL 11359166, at *2 (S.D.N.Y. Mar. 31, 2016). Similarly, here, Plaintiffs have presented this Court with no evidence of their inability to pay.

Plaintiffs cite Cooter & Gell v. Hartmarx Corp. which says, "the central purpose of Rule 11 is to deter baseless filings in district court." Cooter & Gell v.

10

Hartmarx Corp., 496 U.S. 384, 393 (1990). This need for deterrence is precisely what is at issue here where "Plaintiffs' counsel has a pattern of bringing meritless FARA claims." Sanctions Order at 12-13. Because of the lack of financial documentation presented by Plaintiffs, combined with Plaintiffs' Counsels' repeated filing of baseless lawsuits, this Court declines to further consider Plaintiffs' claimed inability to pay this sanctions award.

### D. Case Law on Awarding Sanctions

Finally, the Court declines to consider Plaintiffs' attempt to relitigate the Rule 11 motion. See Dkt. No. 34 at 6-7. Defendants rightly note that the Rule 11 motion was already decided in favor of Defendants. See Dkt. No. 35 at 5-6; see generally Sanctions Order.

### E. Calculation

In light of the Court's findings with respect to the reasonableness of the hours billed and the hourly rates, this Court calculates the fees owed as follows:

|  | Total Hours | Total Fees |
|---|---|---|
| **Motion to Dismiss & Motion for Sanctions** | | |
| Greg Andres (Partner) | 16.5 | $ 28,116.00 |
| Gina Cora (Counsel) | 88.8 | $ 121,272.00 |
| Kate Mathews (Associate) | 107 | $ 90,478.40 |
| Kathleen Lewis (Associate) | 76.4 | $ 62,923.10 |
|  | | |
|  | 288.7 | $ 302,789.50 |
|  | | |
| **Fee Application** | | |
| Greg Andres (Partner) | 1 | $ 1,990.00 |
| Gina Cora (Counsel) | 15 | $ 21,600.00 |
|  | | |
|  | 16 | $ 23,590.00 |
|  | | |
| **Costs** | | |
| Service on Richard Freeth |  | $ 361.50 |
| Service on Yongbing Zhang |  | $ 481.50 |
|  | | |
|  | 304.7 | $ 327,222.50 |

## III. CONCLUSION

In sum, Plaintiffs cannot "hail the defendant into court by means of false allegations" and then "complain when the defendant hires skillful, experienced, and expensive advocates to defend against those allegations." Schwarz v. Folloder, 767 F.2d 125, 134 (5th Cir. 1985). Having sought a fight, Plaintiffs cannot now complain that they've been punched in the face. See Schwarz v. Folloder, 767 F.2d at 134 ("Having wrongfully kicked the snow loose at the top, the Plaintiff must bear the consequences of the avalanche at the bottom.").

For the foregoing reasons, Defendants are awarded a total of a total of $327,222.50 which reflects $326,379.50 in attorney's fees and $843 in costs.

**The Clerk of the Court is respectfully requested to close Dkt. No. 30.**

SO ORDERED.

DATED:   New York, New York
         March 18, 2024

*Jennifer E. Willis*
_____
JENNIFER E. WILLIS
United States Magistrate Judge